The opinion of the Court was delivered by
Mr. Justice Johnson.
The right of Eleanor, the sister of the intestate, to take by descent, forms the basis of the principal grounds taken in support of this motion; for if she is, the plaintiff must be excluded. In considering this case, I shall, therefore, confine my observations solely to that question, and will only remark, that the evidence of the relationship of the plaintiff to the intestate, the legality and sufficiency of which was much litigated, was properly submitted to the Jury.
Eleanor, the sister, being an alien at the time of the descent cast, could not inherit on the principles of the Common Law; nor are there any provisions in the special act of the 20th December, 1806, which enable her to take; her right, therefore, depends on the construction of the act of the Legislature of 19th December, 1807, entitled, “An Act to legalize titles to real property, derived from or through aliens; and to enable aliens, under certain conditions therein mentioned, to hold, convey, and devise, real property.” *20 The first clause recites, that “ Whereas many - 7 J grants, conveyances, and contracts, of, and relating to, real property in this state, have been made 7 r r J ' an(j executed to divers persons, who were aliens at the dates of the said grants, conveyances, or contracts, but who subsequently thereto have become, or intend to become, citizens of the United States of Americaand after reciting several other grievances intended to be remedied, legalizes the titles thus acquired to be. held anjl enjoyed, “ in fee simple, or for any life estate, according to the nature of his, her, or their contract or contracts, grant or grants, or other deed or deeds of conveyance,” under certain provisions and limitations therein mentioned. The second clause of the act provides, “ That all persons holding, or who shall hold real property in this state, under the aforesaid provisions, shall be permitted and allowed” to convey, or “ devise the same to their children, or grand-children“ and in case the person, or persons, holding real property as aforesaid, shall not alien or devise the same, then it shall.be divided and distributed amongst his, her, or their relations, agreeably to the act of the general Assembly, entitled ‘An Act for the abolition of the rights of primogeniture, for the giving an equitable distribution of the real estates of intestates, and for other purposes therein mentioned,’ passed the 19th day of February, 1791, and the acts amendatory; any law, usage, or custom, to the contrary thereof, in *21 any wise notwithstanding. Provided, rievertheless, that the said child, or children, grand-child, . . or children, to whom conveyance, or devise, as aforesaid, may be made, and also the relations entitled, as aforesaid, to distributive proportions of the real property of those who have not aliened or devised their real property, shall become a resident, or residents, in this state, within twelve months after the date of the conveyance made unto him, her, or them, or of the decease of the person, or persons, devising the same, or dying-intestate, as to such real property^, and also becoming a citizen or citizens of this state, within as short a period as he, she, or they, shall be enabled to become so, under the existing laws.”
If the right of Eleanor to inherit depended alone on the construction of this act, or, in other words, if the act of 1808 had never been passed, there is no question but that she comes directly within the letter of its provisions. The intestate, William Richards, was an alien at the date of the conveyance to him for the land in dispute, and he afterwards became a citizen, which vested a title in him, according to the nature of his conveyance, which was in fee simple. He did not alien or devise them, but died intestate, and Eleanor was entitled, under the act of February, 1791, to take in exclusion of the plaintiff, unless disqualified by being an alien. She was at the time of his death, and continued, a resident of the state, and was naturalized in as short a period as was *22 practicable under the existing laws; thus answer-* ing minutely, the description of the property transmissible, and the person entitled to take, accor¿jing to the provisions of the act. But it has been insisted, with great zeal and plausibility, that the first member of the second clause of the act, under the provisions of which she must take, if entitled, by the terms aforesaid provisions, in relation to the holding of property, thereby intended to be transmitted by descent, referred expressly to the persons who held real property in the manner mentioned in the preceding clause, and ought to be confined to them exclusively; to wit, by deed, grant, conveyance, or contract, at the date of which they were aliens; and as the act of 1806 legalized the titles of the intestate to the lands in dispute, he then held them not in the manner referred to by the terms aforesaid provisions, but under that special act.
Judge Blackstone says, that in the construction of remedial statutes, three things are to be observed. 1st, How the Common Law stood before the passing of the act. 2d, What the mis-* chief was for which the Common Law did not provide. And, 3d, What remedy the Legislature hath provided for the mischief? (Isi Black. Com. 85.) And JVoy says, general laws and special laws, the old law and the new law, the laws of God and the laws of man, are oftentimes all joined together for the purpose of helping a man *23 to his right. (JVoy’s Momcius, 42.) And perhaps there is no rule better supported by justice and wisdom than that, when there are several acts on the same subject, they should be read together as one act, so far as their provisions are consistent ; as by this means the mischief, the remedy, and the. intention, of the Legislature, are more distinctly spen and applied.
In the application of these principles to the present case, I shall consider, 1st, Whether the right of Eleanor to inherit is not provided for in the spirit and meaning of the act of 1807 ? 2d, Whether her right, is not secured by the strict letter of that act ?
1st. By the Common Law, Eleanor, being an alien, could not inherit, although a resident in the state, which was obviously the mischief intended to be remedied. Reasoning is not necessary to demonstrate this conclusion; the special act of 1806, and the general act of 1807, speak a language worthy of an enlightened and liberal Legislature, which cannot be misinterpreted. It was an encouragement due to the industry of' many respectable foreigners who resided among us, that the fruits of their labour should be transmitted to their relations, and it only remains to be inquired, whether the remedy provided is, according to these rules of construction, adequate-to the mischief obviously intended to be remedied ? The intestate, and the other individuals named in the act of 1806, laboured under the *24 disabilities of alienage, and the object of the act was to remove them, but it fell short of what was necessary to remove them fully: the general act ^ g07, however, under some restrictions, removes all. These two acts are therefore on the same subject, and have for their object the removal of the disabilities imposed on aliens by the Common Law, to take and transmit real property; and if thedatter be taken with, and regarded as a continuation of the former, although one is a special and the other a general law, and we have seen that they may be joined together to help a man to his rights, and that by this means the mischief and the remedy may be more distinctly seen and applied, a system perfect in its symmetry and reasonable in its operation, is at once established, and it is unreasonable in the extreme to believe, that the Legislature intended by the act of 1807 to make provision for a whole class, and to exclude the few provided for in the act of 1806.
2d. The second clause of the act, as before observed, provides that the descendants and relations of persons dying intestate, who hold real property under the provisions aforesaid, shall take. The provisions referred to in this clause, as contended on the part of the plaintiff, are grants, deeds, conveyances, or contracts. The term grants, as usually applied to land, I am aware, are commonly used in relation to those usually issued to the person to whom the state parts with its *25 right to land. But I am inclined to think it may be with the same propriety applied to an . . . . act of the Legislature vesting rights or privileges in an individual. The act of 1806 has the effect of a grant, and it is only necessary to give it the name, to bring it within the precise letter of the act of 1807. Reason, I think, would justify the construction, but if that Should fail, Legislative authority will support it. The first clause of the act of 1807 contains a proviso, “that nothing therein contained shall be so construed as to interfere with, or invalidate any, grants of real property which may heretofore have been made by the Legislature of this state unto any person or persons,” &c. Now the grants here spoken of, clearly did not relate to those usually issued by the officers of state, and must therefore mean grants by act of the Legislature; it was by this tenure William Richards, the intestate, held the lands in dispute, and they come directly within the terms of the aforesaid provisions.
There is also another view of this case. The act of 1806 is a private act, and was intended for the individual benefit of the persons therein named, among whom is the intestate. Now if he, or those claiming under him, had a better title than that claimed under that act, it does not lie in the mouth of a stranger to say that the inferior title shall supersede the better, and especially as relates to those claiming under him. The act of 1807 gives a certain, and therefore a better title *26 to Eleanor^ and she ought not therefore to be drived to that which is less so. Besides, the act of 1806 does not profess to give Eleanor the right to in-an(j the act of 1807 does expressly; if,therefore, the act of J 806 was conclusive as to the rights of William Bicharás, the intestate, it appears to me that they ought not to be so considered as to Eleanor.
I am, for these reasons, of opinion, that the motion for a new trial ought to be granted.
Grimhei Bay, JVott, Cheves, and Gantt, J. concurred.
Colcock, J. dissented.-